**Howard PASTERNACK, Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 86–772.**

United States Court of Appeals, Federal Circuit.

Sept. 18, 1986.

Howard Pasternack, London, England, submitted pro se.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Thomas W. Petersen, Asst. Director and Paul J. Ehlenbach, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., submitted for respondent. Major Richard Hipple, Office of Judge Advocate Gen., Dept. of Air Force and Robert Terzian, Gen. Counsel, Dept. of Defense, Dependents' Schools, of counsel.

Before FRIEDMAN, Circuit Judge, BENNETT, Senior Circuit Judge, and SMITH, Circuit Judge.

BENNETT, Senior Circuit Judge.

Appellant's claim for tuition and related overseas schooling costs for his two children, covering the years 1981–84, was denied by the United States Claims Court (Margolis, J.). We affirm.

## BACKGROUND

Pro se appellant, Howard Pasternack, an architect and civil engineer, has spent his professional career abroad, working for the Navy in London in the 1960s and thereafter for a succession of private contractors engaged in military construction in England, Iran, and Israel. In September 1981 he was employed by the United States Air Force in England, initially on a 1–year contract. His two children had previously attended private schools in England, expenses therefor being reimbursed by his employers.

It is uncontested that before beginning his work for the Air Force in 1981 he was officially informed that he would not qualify for an educational allowance for the private schooling of his dependent children but could send them to schools operated by the Department of Defense within commuting distance from his duty station. He rejected this opportunity claiming that it would be a hardship, inappropriate, and unconscionable to interrupt his children's education in British schools where, since 1978, they had been exposed to an English-type curriculum. With persistence and skill, Pasternack has for 5 years pursued all available potential remedies to accomplish his goal of having the government pay for the education of his children in British schools which they continued to attend.

When the Air Force and the Department of Defense Dependent's School System (DoDDS) in 1982 rejected his claim made on October 5, 1981, he filed a formal grievance with the Air Force in 1983. The claim was denied in a written opinion by the grievance examiner on December 3, 1983. His decision was adopted by the Air Force. Pasternack next brought suit in the Claims Court alleging that the decision of the Air Force and the DoDDS was arbitrary, capricious, and contrary to law, and he sought money damages in the amount of $18,189.42, plus interest. The parties cross-moved for summary judgment and, on October 10, 1985, the Claims Court granted the government's motion and dismissed appellant's complaint.

The present appeal followed and has been submitted on the briefs.

The Claims Court opinion is unreported. In sum, however, it held that Pasternack's reliance on Department of State Standardized Regulations was misplaced since he was an employee of the Department of Defense. The Defense Dependents' Education Act of 1978, 20 U.S.C. § 921–23 (1982), does provide for an educational allowance for dependents in overseas areas as a part of the DoDDS. *See also* 5 U.S.C. § 5924 (1982). However, the Act permits an allowance only when a DoDDS school is not reasonably available and the Department of Defense is authorized to issue regulations providing circumstances in which such tuition may be granted. Despite this authorization, the court noted that the DoD Instruction Manual says that no allowances are available. DoD 1400.25–M, Civilian Personnel Manual, Chapter 592 (November 9, 1981). The Claims Court further noted that although 1400.25–M became effective after appellant accepted his position with the Air Force, it replaced DoD Instruction 1418.1 (September 16, 1974), which also disallowed payment of educational allowances for DoD employees abroad.

The Claims Court rejected plaintiff's arguments that DoDDS schools were not adequate to prepare his children for entrance into British universities and therefore could be regarded as "inappropriate" under subchapter 7–1 of DoD 1400.25–M. The court noted that DoD Directive 1342.13 (July 8, 1982) suggests that the use of non-DoDDS schools is based on the nonavailability of DoDDS schools and not their suitability to provide education to ensure acceptance into British universities.

Finally, the Claims Court held that reimbursement of transportation costs between the employee's overseas duty station and a DoD-approved school could not be authorized where, as here, plaintiff had been advised of this but nevertheless chose to reside outside the commuting area. DoD 4500.36–R, ch. 6, § II, ¶¶ 6–7.c. On all of these grounds the Claims Court upheld the

rulings of the Department of the Air Force as correct in fact and law.

## OPINION

█ In this appeal, Pasternack persists in relying upon entitlement under the Department of State Standardized Regulations, arguing that when his claim was first denied in 1981 it was on the basis of these regulations. It is true that then, and for some time thereafter, the Air Force exhibited some confusion about the source of its authority in this matter. This, however, provides no legal basis to support the claim on appeal. Pasternack is not an employee of the Department of State. Those regulations do not apply to him, and in any event have not been shown to benefit him even if they did. The Claims Court properly rejected any arguments by appellant based thereon.

Pasternack contends there is further authority to support his claim. First, he alludes to DoD Instruction 1342.4 Part II (November 14, 1957), which remained in effect until May 4, 1970, until amended and finally superseded on July 8, 1982, by DoD Directive 1342.13. The 1957 authority relied on by Pasternack, which has not been shown to have changed in substance, reads in pertinent part:

I. PURPOSE

This Instruction prescribes the policy to be followed in determining the circumstances under which tuition may be provided at Government expense for education of dependents of Department of Defense personnel at tuition-fee schools in foreign areas.

II. GENERAL POLICY

A. In areas where Service-operated schools exist, maximum use shall be made of such facilities.

B. Tuition at Government expense in tuition-fee schools for education of children of Department of Defense personnel in areas where Service-operated schools exist will be authorized only when:

1. Service-operated schools are operating at maximum capacity;

2. Daily commuting distance to a Service-operated school is unreasonable;

3. Traffic hazards or other conditions would involve *undue hardships* for the children concerned if they were required to attend a Service-operated school[.] [Emphasis added.]

Pasternack alleges that he has made out a prima facie case that he is entitled to tuition-paid education for his children at non-DoD schools due to "undue hardship" which would be occasioned by their having to leave the English schools they had been attending and transferring to DoD schools with an American curriculum, only for an anticipated term of 1 year.

Pasternack relies also on a regulation mentioned for the first time in all of these proceedings by his reply brief. Department of Defense Dependents Schools, Atlantic Region, DSAR Regulation 7029.2, August 7, 1980. This regulation authorizes attendance at a non-DoD school at government expense under circumstances similar to those outlined in Instruction 1342.4, discussed above. It says, in part:

E. PROCEDURES

1. *Eligibility*

. . . .

b. [T]he Regional Director may authorize attendance at a non-DoD school under any of the following conditions:

(1) Service-operated (DoD) schools are operating at maximum capacity.

(2) Daily commuting distance to a Service-operated school is unreasonable.

(3) Traffic hazards or other conditions would involve undue hardship for the children concerned if they were required to attend a Service-operated school.

. . . .

5. *Reimbursement to Parents for Tuition Schooling*

a. Parents cannot be reimbursed for expenses which they incurred for tuition schooling and related costs. The only financial assistance that DoDDS–A can provide is by payment directly to the

school or establishment providing the services.

b. Parents may enroll their children in any school of their choice without authorization from DoDDS–A, provided they do so at their own expense and without expectation of reimbursement from DoDDS–A.

Pasternack relies on E.1(b)(2) and (3), above. He has alleged that it would take about 2 hours in each direction from his residence to the DoD school pick-up point, waiting time for the bus, the bus journey, and the time between the arrival of the bus at the school and the commencement of classwork. In comparison, he says that the schools actually attended by his children were much closer. Therefore, it is concluded the commuting distance was unreasonable and a hardship. These are arguments about the facts, inappropriate for us to resolve on appeal and more properly directed, as they were in the complaint, to the Claims Court. Pasternack has neglected to point out to us that it was by his election that he lived far beyond the commuting distance to his duty station. The Claims Court observed that DoD 1400.25–M authorizes reimbursement for transportation costs between the employee's overseas duty station and a DoD-approved school and that any employee who is advised of the commuting area, as Pasternack was, should understand that if he resides outside this area, transportation of dependent students between their residences and the nearest pick-up point within the commuting area or to the school is his responsibility.

Finally, reliance on DSAR Regulation 7029.2 is misplaced by appellant because by its terms it prevents any direct payment to him, even if authorized. His suit asks for money. Also, we note that Pasternack has not filed DSAR Form 7300, required by the regulation, for those seeking tuition assistance for enrollment in a non-DoD school. He asks that we compel the Air Force to submit it to the DoDDS for him and to order that it be granted, reimbursing him for schooling costs for the years 1981–84. In the context of this case, we attach no importance to the fact that he did not file the proper form. The Air Force was well aware of his claim and at no time invoked this regulation, so far as we have been shown.

Appellant Pasternack mounts a final challenge to the treatment by the Claims Court of DoD 1400.25–M. He says that the court was wrong in concluding that payment of the allowances sought was prohibited by this instruction, although authorized by statute. He points to paragraph 7–1 of the instruction, which states:

SUBCHAPTER 7. EDUCATION ALLOWANCE

7–1. General. *The education allowance is not authorized for payment in the Department of Defense.* Education of DoD dependents whose sponsor is stationed in a foreign area is provided *mainly* in DoD-operated overseas schools. When these schools are either *unavailable or inappropriate,* education of dependents must be arranged through the DoD Dependents School System. (Emphasis added.)

In our earlier discussion of the Claims Court's treatment of 1400.25–M, it was noted that this instruction was issued after Pasternack was employed by the Air Force, and after he made his claim, but that it succeeded 1418.1 which, since 1974, had stated no educational allowance would be paid within the Department of Defense. This is repeated by 1400.25–M, as the language quoted above shows. However, it continues in the same paragraph in an inconsistent vein. Assuming that it is an instruction properly applicable here, a proper distinction must be drawn between unavailability of a DoDDS school and the inappropriateness of an available one because of some hardship or other circumstance, such as outlined in cited regulations and manual instructions. Appellant draws this distinction, although the Claims Court did not appear to recognize it.

Appellant next argues that the Claims Court misspoke when it charged him with an expressed desire to use British high schools in order to prepare his children for

British universities because DoDDS schools could not do so. Appellant denies this in his brief. A letter he wrote on October 9, 1982, to Dr. Joseph L. Larkin, Atlantic Region Director of DoDDS, is plainly to the contrary. Invoking all of the instructions and regulations, Pasternack now says that the government school was "inappropriate" and would constitute "undue hardship" sufficiently compelling to require the Air Force to pay for private schooling for two reasons: (1) his children would be precluded from attending a DoDDS school when his 1–year employment contract with the Air Force expired and (2) the DoDDS school would not be suitable for training his children for the British-type education to which they would be returning after the expiration of his 1 year of Air Force civilian employment.

The premise for the claim for schooling costs in 1981–82 has been expanded by appellant to cover the school years 1982–83 and 1983–84. This unmistakably suggests that his claim, based on expectation that he would remain employed by the government for only 1 year in England and that his children would have to return to British secondary schools thereafter, is not according to what happened and that the perceived hardship undergirding his claim as he has stated it, is without factual foundation. Substantial evidence supports the conclusion of the Air Force which was not arbitrary or capricious in denying the claim.

■ The appeal has presented us with a confusing, inconsistent welter of statutory and regulatory authority so untidy that the Air Force itself has given mixed signals to appellant about what it could and could not do thereunder and why. What does emerge is that the Department of Defense has long provided a program of tuition payment to non-DoD schools under carefully delineated guidelines. Whether it has been able to implement the program because of appropriation restraints or otherwise is unnecessary for us to decide here. What we do decide is that, under the statutes, regulations, and instructions we have

cited, the Air Force had authority to grant Pasternack's demands, but that it was not required to do so. On the contrary, as with most such regulations, discretionary authority resided with authorized officials to decide whether he satisfied the criteria for the inappropriateness of available government-supported schooling for the Pasternack children because of the hardships he claimed. He asserts that his claims are irrefutable to any person with a sense of logic and justice. The Air Force saw it differently, holding consistently that the government school was available and adequate and discounting any claimed hardship. It had an American-style program designed for American children. The Air Force obviously felt that such a program was not a harmful thing for the young American Pasternacks. Appellant felt otherwise, based on the fact that his children had not been exposed to it and would presumably leave it after 1 year, a presumption not fulfilled by anticipated termination of his employment at the end of 12 months. Also, the claim was weakened by the fact that appellant chose to compound the problem by electing for personal reasons to live far beyond the commuting area of his duty station.

What this all comes down to is whether the Claims Court was correct in concluding on the undisputed essential facts that the action taken on the claim by the Air Force was according to law and not unreasonable or arbitrary or capricious or lacking in substantial evidence and that the claim was subject to summary judgment by the court. A presumption of good faith attends the decisions of those charged with administering statutes and regulations. That presumption has not been overcome by appellant in the court's view. It found no bad faith or reversible error in the agency decision. That court did not consider all of the legal authority presented on appeal but we believe that it reached the right result as a matter of law. As we have stated, there was authority which was sufficient for the Air Force to provide the relief sought, but it was under no legal compulsion to do so. Pasternack had no unqualified, substantive

**1308**

legal right to be paid for private schooling costs.

In reviewing the decisions of lower courts, our scope of review is limited. Generally, we must decide whether a Claims Court decision is clearly erroneous on the facts or incorrect as a matter of law. *Milmark Services, Inc. v. United States,* 731 F.2d 855 (Fed.Cir.1984); *Heisig v. United States,* 719 F.2d 1153 (Fed.Cir.1983). Upon careful attention to the submissions by the parties and the Claims Court decision, we must affirm the grant of summary judgment to the United States as a matter of law.

AFFIRMED.